**SIGNED THIS 1st day of September, 2026**

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

Paul M. Black
UNITED STATES BANKRUPTCY JUDGE

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | **CHAPTER 7** |
| **MATTHEW LANCE McPHERSON** | ) | |
| | ) | **CASE NO. 26-70528** |
| **Debtor.** | ) | |

## MEMORANDUM OPINION

The Debtor, Matthew Lance McPherson (the "Debtor"), filed *pro se* a voluntary petition under Chapter 7 of the United States Bankruptcy Code on May 15, 2026. (Docket No. 1). On June 26, 2026, the Debtor filed a Motion for Sanctions ("Motion") against the law firm of Klima, Peters & Daly, P.A. ("KPD"), alleging KPD violated the automatic stay of 11 U.S.C. § 362(a), and seeking compensatory and punitive damages. (Docket Nos. 31, 33).[1] The Court scheduled a hearing on the Motion for August 24, 2026, at 10:00 a.m. in Roanoke, Virginia. (Docket No. 42). Despite multiple notices from the Debtor and the Court, KPD failed to respond to the Motion or

[1] On June 23, 2026, the Debtor filed a letter with the Court seeking sanctions against Klima, Peters & Daly for what he considered to be harassment. (Docket No. 31). By Order entered June 24, 2026, the Debtor was ordered to file a motion in compliance with Local Rule 9013-1. (Docket No. 32). The Debtor promptly filed such Motion on June 26, 2026. (Docket No. 33).

appear at the hearing. At the hearing, the Debtor argued in support of his Motion and presented evidence in support of his claim KPD violated the stay. At the conclusion of the hearing, the Court took the matter under advisement.

**FINDINGS OF FACT**

The Debtor testified and presented various communications he alleged he received by email or by regular mail from KPD and creditors. The Debtor also referenced undocketed audio recordings that he submitted to the Court's help desk, which were reviewed by the Court after the hearing.[2]

The evidence supplied by the Debtor demonstrates he previously opened a credit account with a Bank of Missouri affiliate on June 22, 2023. (Docket No. 41). On May 30, 2024, all rights in this account were transferred to consumer debt purchaser LVNV Funding LLC ("LVNV"), including the right to collect an owed balance of $1,208.87, plus interest. (*Id.*).

According to the Debtor's Motion, the Debtor was the defendant in a civil action initiated by a warrant in debt filed by LVNV, represented by KPD, in the Montgomery County, Virginia General District Court. (Docket No. 33). In late March 2026, prior to his petition filing, the Debtor also sent a cease-and-desist letter to KPD, demanding the firm "stop all further collection actions, including phone calls and letters," and informed KPD he would be filing for Chapter 7 bankruptcy. (Docket No. 39-1). After the Debtor filed for bankruptcy on May 15, 2026, KPD promptly moved to dismiss the General District Court case on May 20, 2026.[3] (Docket No. 41).

---

[2] The Debtor filed numerous statements, supplemental statements and exhibits between the time of the filing of the initial letter seeking sanctions and August 26, 2026, including a motion to reconsider filed after the hearing. The Court has reviewed all of these submissions.

[3] The Court has previously noted that the date of the actual dismissal of the General District Court action is not apparent from the online records, but the case has been dismissed. Despite the record of the motion for dismissal filed by KPD on May 20, 2026, as confirmed by Debtor-provided documents, the Debtor attested he was being sued

Following the case's dismissal, the Debtor received a packet of documents post-marked June 2, 2026. (*Id.*). This packet contained among other things: (1) an Affidavit of Indebtedness and Ownership of Account, essentially outlining the above information regarding the ownership of the debt and describing LVNV's business, dated February 16, 2026; (2) two credit card statements for the Debtor's account with Concora Credit ("Concora") showing a balance of $779.13 as of December 2023, and a balance of $0.00 as of June 2024; and, finally, (3) the sale of collection rights on such account from Concora to Resurgent Acquisitions LLC and then to LVNV on May 30, 2024. (*Id.*). The purpose of the documents is unclear, as it appears they were mailed to the state court after KPD asked for the case to be dismissed. The Debtor categorized such communications as "false" and "egregious," rising to the level of harassment.[4] (Docket Nos. 33, 55). The Debtor also alleged in his Motion for Sanctions that, in a call between the Debtor and KPD, it being unclear who initiated the call, Debtor was instructed to "ignore the letters." (*Id.*).

The Debtor filed his Motion on June 23, 2026. (Docket No. 33). In such Motion, he argued the packet received from KPD was "slanderous and false," and represented a collection effort. (*Id.*) After filing, the Debtor alleged he has been "continually barraged" by communications from KPD. (Docket No. 43). The Debtor also accuses KPD of monitoring his Internet traffic through his personal IP address. (*Id.*). Despite the Debtor being asked by the Court for proof of these allegations, no such proof was provided. Simply put, the Debtor presented no evidence of KPD's alleged hounding, or harassment, either in documentation or through audio recordings provided by

in Montgomery County General District Court by KPD on June 23, 2026. (Docket No. 31). No documentary evidence was provided, and the public docket reveals no such pending case.

[4] The Debtor alleged in his Motion that KPD accused him of applying for credit in the regular course of business and creating accounts. (Docket No. 33). A review of the communication shows it to read "In the regular course of business, Plaintiff acquires revolving credit accounts, installment accounts, service accounts and/or other credit lines or obligations." (*Id.*). The Debtor appears to have misinterpreted the party referred to as "Plaintiff" in this affidavit and concluded it to be a directed "slanderous and false" allegation that he "apply for credit on the regular course of business." (*Id.*).

the Debtor. In this supplemental material, the Debtor states that he received from Concora a new, unrequested credit card, but this Court can identify no connection between such item and KPD.[5] (*Id.*).

Through his letters and at his hearing, the Debtor testified he manages several health conditions and has been prescribed various medications to handle such circumstances, including severe anxiety, agoraphobia, and post-traumatic stress disorder. (Docket Nos. 31, 35, 43). He repeatedly alleged in his Motion and supplements that receipt of KPD communications has exacerbated such conditions, left him depressed, and kept him up at night. (Docket Nos. 31, 41, 43, 48). In a letter following his hearing, Debtor again emphasized KPD's actions have exacerbated his medical conditions, "anxiety and PTSD," and otherwise inspired "real fear" within him. (Docket No. 55).

The Debtor originally sought $40,000 for his claimed injury, eventually amending this demand to $150,000 in punitive damages. (Docket Nos. 33, 38). The Debtor argued this substantial sum was "the minimum amount necessary" to deter firms like KPD from undertaking collection efforts such as those he has outlined. (Docket Nos. 43, 49). The Debtor suggested to this Court that KPD undertakes similar "unethical, slanderous" actions against others, and must be sanctioned to discourage collection efforts not only against the Debtor, but those similarly situated.[6] (Docket No. 55).

---

[5] It is not clear to this Court why this credit card was shipped to the Debtor, though it appears it may have been an updated card automatically shipped to the Debtor as a customer of Bank of Missouri. The communication notes, "Your Account is issued by The Bank of Missouri pursuant to a license by Mastercard."

[6] Despite having no ruling at the time, the Debtor filed a motion for reconsideration after the hearing. The Debtor's motion provided this Court with citations to two federal cases involving KPD. (Docket No. 55). The first, *Bittinger*, concerns KPD's alleged violation of federal and state licensing and debt collection laws because KPD had purchased defaulted credit card accounts and attempted to collect from the defaulted account holders. *See Bittinger v. DNF Assocs. LLC*, No. CV TDC-22-2461, 2023 WL 4868364 (D. Md. July 31, 2023). This case was dismissed for failure to state a claim. *Id.* This dismissal was affirmed on appeal by the Fourth Circuit. *See Bittinger v. DNF Assocs., LLC*, No. 23-1896, 2024 WL 808066 (4th Cir. Feb. 6, 2024). In the second case, *Shelton*, KPD was sued by a pro se debtor in default for violations of the Fair Debt Collection Practices Act, Maryland Consumer Debt Collection Act,

The Court notes that on July 9, 2026, following the filing of the Debtor's Motion, this Court ordered KPD to file a response within twenty-one (21) days, and served KPD electronically and its registered agent by mail with such Order. (Docket Nos. 36, 37). KPD failed to do so. (Docket No. 42). The Court also served KPD electronically and KPD's registered agent by mail with the August 3, 2026 Order scheduling the hearing on the Motion for August 24, 2026. (Docket Nos. 42, 44). As previously noted, KPD failed to appear at this hearing. The Debtor also states he attempted to reach KPD repeatedly through phone, electronic mail, and post, but received no response. (Docket No. 35).[7] The Court has fared no better, and KPD continues to ignore all communicatory efforts.

On August 1, 2026, the Debtor filed a Motion for Entry of Default, arguing the failure of KPD to engage in this action entitled him to judgment under Bankruptcy Rule 7055 and Federal Rule of Civil Procedure 55. *See* Fed. R. Bankr. P. 7055; Fed. R. Civ. P. 55; (Docket No. 40). The Debtor emphasized his Motion for Entry of Default in an August 26, 2026, supplementary motion for default judgment. (Docket No. 56).[8]

---

and Maryland Consumer Protection Act, alleging KPD had inflated costs and been deceitful in attempting collection of outstanding debt. *See Shelton v. Klima, Peters & Daly, P.A.*, Case No. 8:24-CV-01068 (D. Md. May 6, 2025). This case was also dismissed for failure to state a claim. *Id.* Neither case is substantially related to the Debtor's contentions or motion.

[7] After the hearing, the court listened to the audio recordings submitted to the help desk by the Debtor. It should be noted that an apparent creditor or creditor's representative, possibly KPD, received a call from the Debtor at some point after the filing of his bankruptcy petition. In this call, the Debtor declined to inform a representative of such creditor whether he had an attorney. The creditor representative then gave no further responses, as is expected.

[8] Bankruptcy Rule 7055, incorporating Federal Rule of Civil Procedure 55, is made applicable to contested matters through Bankruptcy Rule 9014, unless the Court orders otherwise. "Pursuant to Fed. R. Civ. P. 55(a), when a party against whom judgment is sought has failed to plead, the clerk must enter the party's default. The court may then enter a default judgment," but, first, "may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . (C) establish the truth of any allegations or evidence; or (D) investigate any other matter."). *Worsham v. Travel Options, Inc.*, 678 F. App'x 165 (4th Cir. 2017); Fed. R. Civ. P. 55(b)(2). "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotation marks omitted). "The court must, therefore, determine whether the well-pleaded allegations in the complaint support the relief sought in the action." *Id.* (cleaned up). "'[A] defendant's default does not in itself warrant the court in entering a default judgment." *DIRECTV, Inc. v. Pernites*, 200 F. App'x 257, 258 (4th Cir. 2006). The court may conduct an evidentiary hearing to determine damages but may also rely on affidavits and other documentary evidence in the record. *See Upstate Mobile Tire, LLC v. Tread Connection Int'l, LLC*, No. 3:23-CV-00076-RJC-SCR, 2024 WL 3648104, at *2 (W.D.N.C. Aug. 1, 2024). While disturbed by KPD's

## JURISDICTION

This Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a) and the referral made to this Court by Order from the District Court on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes that this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).

## CONCLUSIONS OF LAW

The moment a debtor files a bankruptcy petition, it "operates as a stay, applicable to all entities, of . . . any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6). "The automatic stay is a bedrock principle upon which the Code is built; the importance of § 362 cannot be over-emphasized." *In re Seaton*, 462 B.R. 582, 591 (Bankr. E.D. Va. 2011) (citing *Grady v. A.H. Robins Co.*, 839 F.2d 198, 200 (4th Cir. 1988)).

A debtor seeking damages for violation of the automatic stay under Section 362(k)(1) must establish three elements: (1) that a violation of the stay occurred, (2) that the violation was willful, and (3) that the violation caused actual damages. *See Skillforce, Inc. v. Hafer*, 509 B.R. 523, 529 (Bankr. E.D. Va. 2014). To constitute a willful violation, a creditor need not "act with specific intent but must only commit an intentional act with knowledge of the automatic stay." *In re Kimbler*, 618 B.R. 437, 443 (Bankr. E.D.N.C. 2020). A willful violation of the automatic stay

---

failure to engage in this case, this Court has not been convinced, either through the Debtor's numerous filings or his testimony at the hearing on August 24, 2026, that there is sufficient evidence to support an entry of default or to establish the truth of the Debtor's allegations. The Court is not satisfied it should enter any such judgment in the Debtor's favor on such unsteady ground. Entry or denial of such judgment is left to the sound discretion of the Court, and no party is entitled to such a favorable judgment as a matter of right. *See Silvers v. Iredell Cnty. Dep't of Soc. Servs.*, No. 5:15-CV-00083-RLV-DCK, 2016 WL 427953, at *3-4 (W.D.N.C. Feb. 3, 2016), *aff'd* 669 Fed. App'x. 182 (4th Cir. Oct. 17, 2016).

occurs when a creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures despite it. *See Budget Serv. Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 293 (4th Cir.1986). "Willfulness describes the intentional nature of action taken in violation of the stay, rather than the specific intent to violate the stay." *In re Banks*, 577 B.R. 659, 667 (Bankr. E.D. Va. 2017). The movant bears the burden of proof in an action for violation of the automatic stay and must prove the violation by clear and convincing evidence. *See Brockington v. Citizens & S. Nat'l Bank of South Carolina (In re Brockington)*, 129 B.R. 68, 70 (Bankr.D.S.C.1991).

Here, under the facts supplied, this Court cannot find KPD actually committed any violation of the stay and need not address whether such a violation was willful or actual damages resulted. The Debtor has failed to provide the Court with not only clear and convincing, but *any* evidence of post-petition collection efforts by KPD. Rather, he provides only unsubstantiated allegations of harassment and nuisance, which one would imagine straightforward to demonstrate through letters received, emails stored, or voicemails recorded.[9]

In fact, KPD appears to have promptly recognized the Debtor had filed a bankruptcy petition, dismissed the sole outstanding collection action against the Debtor, namely the case in Montgomery County General District Court, and mailed him a closing summary of account ownership shortly thereafter. In the circumstances of this case, simply supplying a debtor with records of ownership or other similar custodial information without more in the nature of routine bookkeeping is not actionable as a violation of the stay.

---

[9] Why the Debtor was mailed the June 2, 2026, documents in connection with a case where they had already requested dismissal is a mystery, but it would be a stretch to argue that is the continuance of a judicial action under 11 U.S.C. § 362(a)(1) if the case is already dismissed. There was no demand for payment in that packet of information.

Despite the Debtor's contentions that KPD has "continuously barraged him" with communications and collection efforts, "made slanderous and false allegations," made "malicious" statements to him, "violated" the Debtor "in a very aggressive manner," and "aggressively and egregiously attacked" him, the Debtor made no such showing nor produced any concrete example of such conduct. (Docket Nos. 33, 35, 38, 48, 50). The Court finds the Debtor has failed to prove by clear and convincing evidence that KPD violated the automatic stay; as a result, his Motion must be denied, and the Court need not go further. *See In re Grisard-Van Roey*, 373 B.R. 441, 444 (Bankr. D.S.C. 2007) (finding a motion for sanctions under section 362(k) could not be granted where debtor failed to show a violation of the stay occurred). The Court also declines to invoke its inherent power to impose sanctions against KPD under 11 U.S.C. § 105(a) as requested by the Debtor for the same reasons.

## **CONCLUSION**

For the foregoing reasons, this Court finds that the Debtor's Motion for Sanctions must be denied.

A separate Order will be entered contemporaneously herewith.

** END OF ORDER **